WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JULIE WILSON,                              )
                                           )
            Plaintiff,                     )
                                           )
   vs.                                     )
                                           )
ACCIDENT FUND GENERAL INSURANCE            )
COMPANY, COMPWEST INSURANCE                )
COMPANY, and DEB GORNEY,                   )
                                           )   No. 2:13-cv-2012-HRH
            Defendants.                    )
_____)

O R D E R

Motion to Dismiss

Defendant Deb Gorney moves to dismiss plaintiff's claim[1] against her.[2] This motion is opposed.[3] Oral argument was requested but is not deemed necessary.

---

[1]Plaintiff has alleged only an aiding and abetting claim against Gorney. Complaint at 9-10, ¶¶ 24-31, Docket No. 1; see also, Response to Motion to Dismiss Deb Gorney at 2, Docket No. 19 ("The only cause of action alleged against Defendant Gorney is one for aiding and abetting the insurance company defendants' breach of the duty of good faith and fair dealing").

[2]Docket No. 13.

[3]Docket No. 19.

-1-

Facts

Plaintiff is Julie Wilson. Defendants are Accident Fund General Insurance Company, Compwest Insurance Company, and Deb Gorney.

Plaintiff alleges that she was "injured in the course and scope of her employment on or about September 30, 2012."[4] Plaintiff filed a workers' compensation claim, which was adjusted by Gorney, acting within the scope and course of her employment for the insurance company defendants.[5] Plaintiff's claim was originally denied, which "caused [plaintiff] to initiate preliminary proceedings before the Industrial Commission of Arizona."[6] After plaintiff initiated these preliminary proceedings, her claim was accepted on May 3, 2013.[7]

On October 3, 2013, plaintiff commenced this action, in which she asserts a breach of the implied covenant of good faith and fair dealing claim against the insurance company defendants and a claim of aiding and abetting against Gorney. Plaintiff alleges generally that defendants "fail[ed] to conduct a reasonable investigation" of her claim.[8] Plaintiff further alleges that Gorney "knew that, after an adequate investigation, [plaintiff's] claim was not fairly debatable, that ACCIDENT FUND and COMPWEST delayed and denied [plaintiff's]

---

[4]Complaint at 5, ¶ 11, Docket No. 1.

[5]Id. at ¶ 12.

[6]Id. at 6, ¶ 14.

[7]Id.

[8]Id. at ¶ 15a.

claim without any reasonable basis, and that ACCIDENT FUND and COMPWEST knew or recklessly disregarded this lack of a reasonable basis to delay and deny [her] claim."[9]

Defendant Gorney now moves to dismiss plaintiff's claim against her.

## Discussion

"To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 571 (2007)). The court accepts all allegations in the complaint as true and construes them in the light most favorable to plaintiff. United States v. Corinthian Colleges, 655 F.3d 984, 991 (9th Cir. 2011).

"Arizona recognizes aiding and abetting as embodied in Restatement § 876(b), that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person." Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund, 38 P.3d 12, 23 (Ariz. 2002).

> Claims of aiding and abetting tortious conduct require proof of three elements:
>
> (1)  the primary tortfeasor must commit a tort that causes injury to the plaintiff;
>
> (2)  the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and

---

[9]Id. at 10, ¶ 27.

>> (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach.

Id. As to the second element, the plaintiff must show "that the defendants knew the conduct they allegedly aided and abetted was a tort." Dawson v. Withycombe, 163 P.3d 1034, 1052 (Ariz. Ct. App. 2007). "This knowledge may be inferred from the circumstances presented." Id. "However, an inference of knowledge will not be made lightly." Federico v. Maric, 226 P.3d 403, 405 (Ariz. Ct. App. 2010). As to the third element, "'[s]ubstantial assistance means more than a little aid.'" In re Amer. Continental Corp./Lincoln Sav. and Loan Securities Litig., 794 F. Supp. 1424, 1435 (D. Ariz. 1992) (quoting Barker v. Henderson, Franklin, Starnes & Holt, 797 F.2d 490, 496 (7th Cir. 1986)).

Plaintiff has alleged sufficient facts to support an aiding and abetting claim against Gorney. She has alleged that the insurance company defendants breached their duty of good faith and fair dealing, primarily because they denied her claim without having a reasonable basis for doing so. She has alleged that Gorney knew that plaintiff's claim was not fairly debatable and that the insurance company defendants did not have a reasonable basis for denying her claim. Gorney's knowledge can also be inferred from the fact that she was the claims adjuster assigned to plaintiff's claim. And plaintiff has alleged that Gorney substantially assisted the insurance company defendants by failing to do an adequate investigation and by refusing to pay plaintiff's claim.

Gorney argues that plaintiff's aiding and abetting claim is nonetheless implausible because she was acting within the scope of her employment and thus her acts were legally the acts or omissions of the insurance company defendants. See Southern Union Co. v. Southwest Gas Corp., 165 F. Supp. 2d 1010, 1038 (D. Ariz. 2001) ("Where an officer is acting on behalf of the corporation, he is for all practical purposes 'the corporation.'"). If her acts or omissions were those of the insurance company defendants, then Gorney argues that she could not have aided and abetted their tortious conduct.

Gorney's argument fails because "'[i]t is well-established law that an agent will not be excused from responsibility for tortious conduct [merely] because he is acting for his principal.'" Warner v. Southwest Desert Images, LLC, 180 P.3d 986, 992 (Ariz. Ct. App. 2008) (quoting Griffith v. Faltz, 785 P.2d 119, 120–21 (Ariz. Ct. App. 1990)). In Morrow v. Boston Mutual Life Insurance Company, Case No. CIV 06-2635- PHX–SMM, 2007 WL 3287585 (D. Ariz. Nov. 5, 2007), two defendants made an argument similar to Gorney's. Boston Mutual, through its claim administrator, hired Behavioral Management, Inc. (BMI), "which in turn hired Dr. Kilburn, to perform a file review and provider consultation." Id. at *1. Dr. Kilburn prepared a report recommending that Morrow's long-term disability benefits be terminated, a recommendation Boston Mutual did not follow. Id. Morrow, nonetheless, brought suit against Boston Mutual, BMI and Dr. Kilburn. In Count Two of his complaint, Morrow sought to hold BMI and Dr. Kilburn "liable for aiding and abetting a tort committed by the

principal[,]" Boston Mutual. Id. at *3. BMI and Dr. Kilburn argued "that the agency relationship between [them] and Boston Mutual/DRMS precludes Defendants' liability under Count Two." Id. The court rejected that argument because "[a]s a general principle, agents are liable to third parties harmed by the agent's tortious conduct, even when the conduct occurs within the scope of the agency." Id. at *6.

Similarly, in Inman v. Wesco Insurance Company, Case No. CV-12-02518-PHX-GMS, 2013 WL 2635603, at *1 (D. Ariz. June 12, 2013), the plaintiff asserted an aiding and abetting claim against Murphy, the Wesco Insurance Company adjuster, assigned to handle his worker's compensation claim. Murphy moved to dismiss Inman's aiding and abetting claim, arguing "that a plaintiff cannot sue an adjuster for aiding and abetting her own employer, the insurer, in breaching its duty of good faith and fair dealing." Id. at *3. More specifically, she argued that she "and Wesco were acting as one entity.... According to the allegations in the Complaint, Defendant Murphy's conduct was entirely within her course and scope of employment, and therefore any alleged bad faith would be imputed to Wesco." Id. The court rejected this argument because it "ignore[d] longstanding principles of the law of agency[,]" namely that "'[i]t is well-established law that an agent will not be excused from responsibility for tortious conduct [merely] because he is acting for his principal.'" Id. (quoting Warner, 180 P.3d at 992 ). The court observed that "[w]hile the application of these principles to the insurance setting may seem strange to Murphy, it is not unusual." Id. at *4.

The court concluded that

> an aiding and abetting claim is not barred simply because a person worked for the alleged primary tortfeasor and was acting within the scope of her employment. It is true that there are not many recorded cases where a claim is pressed against the adjuster; nevertheless, Murphy has not shown any reason why principles of agency law should not apply with equal force in the insurance setting. Even if that application is uncertain, "uncertainties as to the current state of controlling substantive law must also be resolved in favor of plaintiff and against the defendant" at th[e motion to dimiss] stage.

Id. (quoting Bertrand v. Aventis Pasteur Labs., Inc., 226 F. Supp. 2d 1206, 1212 (D. Ariz. 2002)).

Gorney has cited to no authority that is contrary to Morrow and Inman. Rather, Gorney relies on Federico, 226 P.3d 403. There, Federico was injured at his job and Liberty Mutual, the worker's comp carrier, requested an IME, which was completed by Maric. Id. at 404. Maric

> submitted his results to Liberty Mutual suggesting that Federico needed no further medical treatment. Maric noted Federico's subjective complaints of pain and concluded that Federico demonstrated no objective evidence of physical injury or pain. He also suggested a possibility of malingering by Federico. Thereafter, Liberty Mutual denied Federico's worker's compensation claim.

Id. Federico offered the following as evidence that Maric aided and abetted Liberty Mutual:

> 1. Maric knew he was working for Liberty Mutual.
> 2. Maric had done work for Liberty Mutual before.
> 3. Maric knew that calling somebody a malingerer can have a negative connotation.
> 4. Maric knew that opining that a claimant is motivated by

> secondary gains can have a negative affect on their claim.
> 5. Maric knew that his IME report would adversely affect the outcome of Federico's workmans' compensation claim.
> 6. Maric prejudges the patients he sees because he believes that the honest claims by legitimately injured people are settled and he never sees those people.
> 7. Maric believes the people he sees are seeking monetary damages far beyond what is appropriate.
> 8. Maric finds almost 60% of the people he sees are imagining their pain or exaggerating their pain to make money from lawsuits.
> 9. Maric believes that he sees a skewed population of patients.
> 10. Maric finds only about 3.7% of the people on whom he performs IMEs are truly injured, and that injury was caused by the incident complained of.
> 11. Maric believes that lawsuits drive the amount of care because that is how claimants' attorneys make more money.
> 12. Maric performed an inadequate medical examination of Federico.

Id. at 406.

On motion for summary judgment, the court found that Federico had not offered any evidence that "suggest[ed] in any way that Maric had knowledge of Liberty Mutual's intent or even propensity to act in bad faith toward Federico's claim." Id. The court observed that "[i]t is clear that the facts asserted by Federico pertain only to Maric's own actions and the propriety thereof with[out] any reference to the actions of Liberty Mutual or the knowledge of those actions by Maric." Id. The court rejected "Federico's argument ... that any time Liberty Mutual hires Maric, even through a third party intermediary, it does so to further its bad faith intent and, because of that, any time Maric performs an IME for Liberty Mutual, even when retained through a third party intermediary, he does so for the purpose of aiding and

abetting Liberty Mutual in acting in bad faith." Id. The court also found that "Federico failed to provide any evidence to support even the inference that Maric's IME assisted Liberty Mutual in its acting in bad faith." Id. at 407.

Gorney argues that like Federico, plaintiff has failed to present any evidence in support of her aiding and abetting claim. However, the Federico case involved a motion for summary judgment. Here, the court is deciding a Rule 12(b)(6) motion to dismiss. On a motion to dismiss, the question is not whether plaintiff has presented any evidence in support of her claim, but whether she has stated a plausible claim for relief, which plaintiff has done here. Plaintiff has adequately alleged each of the three elements of such an aiding and abetting claim, and the fact that Gorney was acting within the scope of her employment does not preclude plaintiff from asserting an aiding and abetting claim against Gorney.

## Conclusion

Gorney's motion to dismiss[10] is denied.

DATED at Anchorage, Alaska, this 18th day of December, 2013.

/s/ H. Russel Holland
United States District Judge

---

[10]Docket No. 13.